IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YADIER GARCIA RODRIGUEZ, | ) | Case No. 4:26-cv-0302 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| KEVIN RAYCRAFT, *in his official capacity* | ) | |
| *as Field Office Director of Enforcement and* | ) | **MEMORANDUM OPINION** |
| *Removal Operations, Detroit, United States* | ) | **AND ORDER** |
| *Immigration and Customs Enforcement, et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

On February 5, 2026, Yadier Garcia Rodriguez ("Petitioner") filed a petition for writ of habeas corpus by a person in federal Immigration and Customs Enforcement ("ICE"). ECF 1. The Petition named Kevin Raycraft, Field Office Director of Enforcement and Removal Operations, Detroit Field Office, U.S. ICE; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pam Bondi, Attorney General of the United States, as the appropriate custodians (collectively, "Respondents") as the appropriate custodians. Petitioner has been in ICE custody since June 24, 2025, and is presently being detained at Northeast Ohio Correctional Center ("NEOCC"). *Id.* ¶¶ 1, 11. He now moves this Court to order his release from detention because his prolonged detention violates his due process rights. Respondents assert that this Court lacks subject-matter jurisdiction and that Petitioner has failed to exhaust his administrative remedies, which would both preclude this Court from hearing the Petition on the merits. In the alternative,

Respondents argue that Petitioner is not entitled to a bond hearing because he is subject to a mandatory detention statute and his continued detention does not violate Due Process.

For the reasons discussed below, the Court GRANTS the Petition and orders that Petitioner be given a prompt bond hearing.

**I. FACTUAL BACKGROUND**

Petitioner Yadier Garcia Rodriguez is a citizen and national of Cuba. ECF 1, ¶ 1. On September 16, 2023, Petitioner presented himself at the Paso Del Norte Port of Entry in El Paso, Texas, using an appointment scheduled on the CBPOne App. *Id.* ¶ 2; ECF 4-1 at 2. Upon inspection at the border, Petitioner was deemed inadmissible pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), as someone who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter. ECF 4-1, at 2; ECF 4-2 Accordingly, he was placed in removal proceedings pursuant to 8 U.S.C. § 1229a, and provided a Notice to Appear ("NTA") which ordered him to appear before an immigration judge ("IJ") in Dallas, Texas, on May 5, 2025. ECF 4-1, at 2; ECF 4-2, at 1. In the interim, Petitioner was paroled into the country pursuant to section 212(d)(5) of the INA and provided a Form I-94. ECF 4-2, at 1; *see also* ECF 1-2.

However, Petitioner was only granted parole for roughly nineteen months, or until April 18, 2025. ECF 1-2. This left a roughly two-and-a-half-week period leading up to Petitioner's appearance before an IJ where he was present in the United States unlawfully. On May 5, 2025, Respondents allege that Petitioner failed to appear for his scheduled appearance before an IJ in Dallas, Texas (pursuant to the NTA he was issued upon arrival). ECF 4, at 2; ECF 4-3 (final order of removal *in abstentia* issued by IJ on May 5, 2025, in Dallas, Texas). The final order of removal states that it was mailed to Petitioner on May 7, 2025, *see* ECF 4-3, at 4, though Petitioner does not clarify one way or the other whether he received this order.

On June 24, 2025, while Petitioner was traveling for work, Petitioner "took a wrong turn into Canada while trying to drive to Michigan" from upstate New York. ECF 4, at 2; *see also* ECF 1, ¶ 32; ECF 4-4, at 2-3 (ICE Form I-213 narrative discussing Petitioner's detention at the Lewiston Bridge in Lewiston, New York). Petitioner was stopped by Customs and Border Patrol authorities at the Canadian border, "where security checks revealed his final order of removal and that his employment authorization had been revoked." ECF 4, at 2; ECF 4-4, at 2-3. At that time, "[o]fficers at the border crossing detained Petitioner and confiscated all his credentials, such as [his] employment authorization document and social security card." ECF 1, ¶ 32. Petitioner has been in continuous immigration custody since that date. Additionally, at some point thereafter, Petitioner was transferred to NEOCC and has been detained at NEOCC since.

"On or about July 9, 2025, Petitioner moved to reopen his removal proceedings, which the immigration court granted on August 5, 2025." ECF 4, at 2; *see also* ECF 4-6 (IJ order granting Petitioner's motion to reopen his removal proceedings). Importantly, this had the effect of vacating the prior final order of removal. *See Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004) ("the grant[ing] of a motion to reopen vacates the previous order of deportation or removal...."). Subsequently, in October 2025,[1] Petitioner filed for Adjustment of Status under the Cuban Adjustment Act. This application is still pending with U.S. Citizenship and Immigration Services ("USCIS"). Petitioner also later moved to terminate his removal proceedings, though the IJ denied this request on February 2, 2026. ECF 4, at 2; ECF 4-5. As a result, the removal proceedings are still ongoing.

---

[1] The specific date Petitioner filed his application to adjust status is not known. However, a notice from USCIS states that the application was on October 30, 2025. ECF 1-3.

3

## II. PROCEDURAL BACKGROUND

Shortly afterwards, on February 5, 2026, Petitioner filed the instant petition for habeas corpus. ECF 1. In the Petition, he asserts that "Respondents have detained Petitioner not based on any individualized assessment of his personal circumstances or facts, but rather on an erroneous categorical determination that, notwithstanding the Fifth Amendment, noncitizens are not entitled to due process of law." *Id.*, ¶ 6. A few days later, the Court set a briefing schedule and *sua sponte* issued an injunction restraining Respondents from transferring Petitioner from the jurisdiction of this Court while the matter was pending.

Respondents filed their response on February 23, 2026. ECF 4. They first assert that this Court lacks subject-matter jurisdiction over Petitioner's claim pursuant to a number of jurisdiction-stripping statutes under the INA. Further, Respondents argue that this Court is precluded from considering the Petition because Petitioner has not exhausted his administrative remedies. But if the Court were to reach the merits of the case, Respondents argue that Petitioner is not entitled to relief because he is subject to a mandatory detention statute and his ongoing detention does not violate due process.

Petitioner filed his reply on March 2, 2026, ECF 5, with supplemental exhibits being filed on March 3, 2026, ECF 6. Having been fully briefed, the matter is now ripe for ruling.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.' " *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). The fundamental

4

protections of habeas corpus also apply in the immigration context. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court observed:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.*, 693 (citations omitted).

While the district courts' habeas powers are somewhat limited in the immigration context, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders), "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal," *Jiang Lu v. U.S. ICE*, 22 F.Supp.3d 839, 841 (N.D. Ohio 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18 (2003)).

## IV. DISCUSSION

### A. Subject-Matter Jurisdiction

As a threshold matter, this Court must assess the fundamental question of its own subject-matter jurisdiction. Respondents do not dispute that Petitioner's claim is appropriately brought as a habeas petitioner pursuant to 28 U.S.C. § 2241. Rather, they contend that various sections of the INA strip this Court of the jurisdiction to hear this particular claim. Specifically, Respondents contend that sections 1252(a)(5), (b)(9), and (g) deprive this Court of subject-matter jurisdiction, as well as a handful of other miscellaneous statutes and regulations. ECF 4, at 3-6. The Court addresses each of these arguments in turn.

1. **Section 1252(a)(5)**

Section 1252(a)(5) states that:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5). Respondents argue that this section, when read with section 1252(b)(9) (discussed *infra*), preclude any district court from reviewing "any issue—whether legal or factual— arising from any removal-related activity." ECF 4, at 4 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). That is not quite accurate. The plain language of section 1252(a)(5) pertains exclusively to "judicial review of an <u>order of removal</u>." 8 U.S.C. § 1252(a)(5) (emphasis added). Here, Petitioner is not challenging any order of removal; indeed, there is no order of removal in effect for Petitioner to challenge. *See supra* (noting that, when the IJ granted Petitioner's motion to reopen his removal proceedings, this had the effect of vacating the existing final order of removal). Rather, Petitioner is challenging whether his continued detention, without further procedural safeguards (*i.e.*, a bond hearing), violates the Fifth Amendment. Accordingly, section 1252(a)(5) does not deprive this Court of subject-matter jurisdiction.

2. **Section 1252(g)**

The purpose of section 1252(g) is to deprive any and all courts of the jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," except as otherwise provided in this section. 8 U.S.C. § 1252(g). Respondents contend that "[t]he Secretary of Homeland Security's decision to commence removal proceedings includes the decision to detain an alien during removal

6

proceedings." ECF 4, at 3 (collecting cases from outside the Sixth Circuit). Therefore, this section "bars judicial review of the Petition." *Id.*

However, the Supreme Court has declined to read section 1252(g) as a broad prohibition on any possible claim causally arising from those three actions. *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.") Indeed, the Sixth Circuit has found that habeas petitions alleging constitutional violations do not "arise from" the aforementioned acts and thus are outside of sections 1252(g)'s prohibition. *Hamama v. Adducci,* 912 F.3d 869, 877 (6th Cir. 2018) ("We agree [with the government and petitioners that] the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims."); *see also Ozturk v. Hyde,* 136 F.4th 382, 396-97 (2d Cir. 2025) (finding that a challenge to pre-removal order detention was not barred by section 1252(g)). Additionally, the Supreme Court has affirmed that federal courts are not restrained from hearing claims related to the conditions of detention by section 1252(b)(9), which, as discussed *infra*, contains far more expansive language compared to section 1252(g). *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018) (plurality) (cleaned up))). And Petitioner's argument that his prolonged detention is unconstitutional is, indeed, a claim related to the conditions of his detention. Accordingly, the Court finds that section 1252(g) does not strip this Court of subject-matter jurisdiction.

3. **Section 1252(b)(9)**

Section 1252(b)(9) is expansive, providing that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). However, this language must be read in the context of the rest of the statute. *See Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (recalling that, when conducting a statutory analysis, "statutory language has meaning only in [the] context" of the rest of the statute). Indeed, section 1252(b), which necessarily contains subsection (b)(9), governs the review of an order of removal under section 1252(a)(1). Notably, section 1252(a)(1) is a limitation on judicial review specifically of final orders of removal. And since there is no order of removal for this court to review, as discussed *supra*, section 1252(b) cannot be implicated, including its subsection. Thus, section 1252(b)(9) is no jurisdictional bar.

Section 1252(b)(9) is also inapplicable because claims of unconstitutional detention do not constitute a question of law or fact "arising from" an action taken or proceeding brought to remove an alien. Respondents argue that "Petitioner challenges the decision to detain him, which arises from DHS's decision to remove him, and then reopen removal proceedings, which are 'action[s] taken . . . to remove [him] from the United States.' " ECF 4, at 5 (quoting 8 U.S.C. § 1252(b)(9)). But a plurality of the Supreme Court rejected this expansive reading of section 1252(b)(9) because, while issues of detention and entitlement to bond hearings arguably "arise from" removal proceedings, to include them within the gambit of section 1252(b)(9) would have "staggering results." *Jennings*, 583 U.S. at 293 (plurality opinion).

> Suppose, for example, that a detained alien wishes to assert a claim under *Bivens* [ ], based on allegedly inhumane conditions of

8

> confinement. [ ] Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id.* (internal citations omitted). A majority of the Supreme Court adopted this holding just two years later, stating that "[a]s we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents of the Univ. of Cal.*, 591 U.S. at 19 (citing *Jennings*, 583 U.S. at 294-95 (plurality opinion) (cleaned up)).

Here, Petitioner is not challenging an order of removal (indeed, there is no order of removal). He is not challenging Respondents' decision to seek removal in the first place. And he is not challenging the process by which removability will be determined. Rather, Petitioner only challenges Respondents' decision to <u>continuously</u> detain him, seemingly indefinitely, pending the outcome of his removal proceedings.

> Interpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings*, 583 U.S. at 293 (plurality opinion).

Respondents' arguments to the contrary are unpersuasive. Not only are none of the cases they cite binding on this Court, but all but two of the cases pre-date the Supreme Court's clarification of section 1252(b)(9) in *Jennings* and *Regents of the University of California*. *See generally* ECF 4, at 3-6. Respondents do cite to *Jennings* to argue that "section 1252(b)(9) includes

9

challenges to the decision to detain an alien in the first place or to seek removal." *Id.*, at 5 (cleaned up) (citing *Jennings*, 583 U.S. at 294-95). However, this specific proposition—that section 1252(b)(9) precludes challenges to detention itself—is not a binding opinion from the Supreme Court. That proposition comes from a plurality opinion which was adopted by only three Justices at that time. When a majority of the Supreme Court later embraced the *Jennings* Court's jurisdictional analysis regarding section 1252(b)(9), it excluded this language. *See Regents of the Univ. of Cal.*, 591 U.S. at 19. This Court declines to read it back in.

Accordingly, Petitioner's claim does not fall within section 1252(b)(9)'s prohibition, and therefore section 1252(b)(9) does not deprive this Court of subject-matter jurisdiction.

**4. Miscellaneous**

Respondents lastly cite a variety of statutes and regulations that they argue prevent this Court from reaching Petitioner's claim on the merits.

First, Respondents argue that section 1252(e)(2) "severely limit[s] this Court's jurisdiction to three narrowly tailored issues: whether petitioner is an alien; whether the petitioner was ordered removed; and whether petitioner has been lawfully admitted and such status has not been terminated." ECF 4, at 5. Since Petitioner is not raising any of these issues, Respondents argue, "the statute does not confer this Court with jurisdiction." *Id.*, at 6. However, Respondents miss that section 1252(e), including subsection (e)(2), pertains exclusively to the judicial review of orders and determinations under section 1225(b)(1). 8 U.S.C. § 1252(e). As discussed *infra*, Petitioner is not being detained under section 1225(b)(1). Therefore, no order or determination relating to him can have come from under section 1225(b)(1). Accordingly, section 1252(e)(2) does not preclude this Court's jurisdiction.

Next, Respondents argue that "this Court lacks jurisdiction to review any argument related to the expiration of Petitioner's parole." ECF 4, at 6. This is because "[p]arole is discretionary and

may be revoked by notice 'upon accomplishment of the purpose for which parole was authorized […].' " *Id.* (quoting 8 C.F.R. § 212.5(e)(2)(i)). Respondents also argue that review over parole revocation is preluded under section 1252(a)(2)(B)(ii). *Id.* This argument misunderstands Petitioner's claim. Petitioner does not claim that his previous parole did not, in fact, expire. Rather, he is arguing that continuously detaining him since June 24, 2025—a period of 258 days as of the date of this Order and counting[2]—violates his right to due process of law under the Fifth Amendment. And, as discussed *supra*, section 1252(a) pertains specifically to judicial review of orders of removal—and there is no currently effective order of removal in this case.

In sum, this Court finds none of Respondents' arguments persuasive. This Court has proper subject-matter jurisdiction to review Petitioner's habeas claim.

B. **Exhaustion of Administrative Remedies**

Even if this Court has jurisdiction, Respondents argue that Petitioner first must exhaust his administrative remedies before bringing any habeas petition regarding his detention. ECF 4, at 6. In support of this argument, Respondents state that Petitioner "has not requested a custody redetermination in the first instance," before citing to a handful of other cases in this district dismissing for failure to exhaust administrative remedies.

At the outset, it must be noted that there is no statute requiring Petitioner to administratively exhaust his claims. "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992). But when it is not mandated, whether to require exhaustion is within the sound discretion of the court. *Id.*; *see also Shearson v. Holder,* 725 F.3d 588, 593 (6th Cir. 2013) ("When Congress has not clearly required exhaustion, sound judicial discretion governs

---

[2] It could be argued that the period of detention between June 24, 2025, and August 5, 2025, should not be counted for this purpose because Petitioner was detained under section 1231(a) due to a final order of removal. Petitioner is not claiming that his detention violates a statutory right, but rather that his detention violates his constitutional rights. As such, this Court finds that any difference in calculating the length of Petitioner's detention that would result from starting on August 5, 2025, when Petitioner began being held under section 1225(b)(2), is negligible at best.

11

whether or not exhaustion should be required." (quotation omitted)). Exhaustion requirements not written into the text of the statute are prudential. *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994). Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

None of the cases that Respondents cite are persuasive. Indeed, they are all plainly distinguishable. All but one concerned a petitioner who had bond denied by an IJ, but had not yet appealed to, or had not yet received a determination from, the Board of Immigration Appeals ("BIA"). As Respondents have themselves noted, Petitioner has not received any sort of bond hearing since the onset of his detention last summer. *Cf.* ECF 6, at 4 (noting that Petitioner "has not requested a custody redetermination in the first instance," thereby implying that no hearing has been held at all). There is therefore no decision denying bond for Petitioner to appeal to the BIA. And the one outlier[3] concerned a petitioner in expedited removal proceedings under section 1225(b)(1), which the Petitioner here is undisputably not subject to. Accordingly, this Court finds it appropriate to undertake its own exhaustion analysis.

The Sixth Circuit has not formally adopted a test to determine prudential exhaustion, *see, e.g.*, *Puerto-Hernandez v. Lynch*, 808 F.Supp.3d 802, 813 (W.D. Mich. 2025), but many district courts in this Circuit have adopted the Ninth Circuit's three-part test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). The *California Care* test would require prudential exhaustion when:

> 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

---

[3] *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, Case No. 1:25-cv-01621, 2025 WL 2444114 (N.D. Ohio Aug. 25, 2025).

12

>(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
>(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Diego v. Raycraft*, Case No. 25-13288, 2025 WL 3159106, at *3 (E.D. Mich. Nov. 12, 2025) (citing *Lopez-Campos v. Raycraft*, --- F. Supp.3d ---, Case No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025), *appeal docketed*, Case No. 25-1965 (6th Cir. Oct. 27, 2025)).

All three factors weigh in favor of waiving exhaustion. This case presents an issue of constitutional interpretation (*i.e.*, a legal question), which the BIA has no particular expertise in and "lacks authority to review." *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Nor is a further development of the record necessary to adjudicate whether the Petitioner's continued detention violates due process without further process (*e.g.*, a bond hearing). There can be no administrative review scheme to bypass when the BIA—the administrative review scheme at issue here—"lacks authority to review" Petitioner's due process claim. *Sterkaj*, 439 F.3d at 279. And the BIA cannot correct any mistake that it has no authority to review in the first place. *See also Gonzalez v. Raycraft,* 807 F.Supp.3d 755 (E.D. Mich. 2025) (reaching same conclusion); *Leiva Lemus v. Lynch*, Case No. 4:26-cv-203, 2026 WL 496731, at *2-5 (N.D. Ohio Feb. 23, 2026) (same); *Echavarria Morales v. Noem*, Case No. 3:25-cv-2691, 2026 WL 100583, at *2-3 (N.D. Ohio Jan. 14, 2026) (same).

Even if these factors weighed in favor of requiring administrative exhaustion, the Court may still waive administrative exhaustion "when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks," or when "delay means hardship." *Lopez-Campos*, 2025 WL 2496379, at *4. As just discussed, Petitioner is significantly unlikely to obtain the relief he seeks through the administrative process. And as discussed *infra*, Petitioner has a substantial liberty

13

interest in being free from detention. Requiring Petitioner to go through a process that cannot afford him the relief he seeks would cause significant delay and hardship, resulting in the very harm that due process analysis via habeas is intended to prevent. *See Pizarro Reyes v. Raycraft*, Case No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp.3d 227, 237 (W.D.N.Y. 2019)).

Accordingly, the Court waives Petitioner's exhaustion requirements.

**C. Merits**

Having determined that this Court has proper subject-matter jurisdiction to hear Petitioner's claim and having waived any prudential requirement to exhaust administrative remedies, the Court now turns to the merits of the petition.

The parties agree that Petitioner is being detained subject to 8 U.S.C. § 1225(b)(2).[4] That statute provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2). While section 1225(b)(2) mandates detention (in that the word "shall" is used), discretionary parole is permitted under section 1182(d)(5)(A). 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis . . . any alien applying for admission to the United States."); *see also* 8 C.F.R §§ 212.5(b), 235.3(c). This

---

[4] Respondents argue that, because Petitioner was subject to a final order of removal at the time of his arrest on June 24, 2025, until the IJ reopened his removal proceedings (thereby vacating the final order) on August 5, 2025, Petitioner was properly detained under 8 U.S.C. § 1231(a)(2)(A). ECF 4, at 6-7. Since the reopening of Petitioner's proceedings, Respondents argue that Petitioner is properly detained under section 1225(b)(1) because he is an "arriving alien." *Id.*, at 7. After that initial assertion, however, Respondents suggest that Petitioner is in section 1229a removal proceedings, which would mean he is detained pursuant to section 1225(b)(2). *See id.* at 7-8; *see also* 8 C.F.R. § 235.3(b)(3) (providing that an alien placed into 8 U.S.C. § 1229a removal proceedings in lieu of expedited removal proceedings under 8 U.S.C. § 1225 "shall be detained" pursuant to 8 U.S.C. § 1225(b)(2)). Given that Respondents' supporting documentation all refer to removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a, the record supports a finding that Petitioner is properly detained under section 1225(b)(2).

14

includes "[a]liens whose continued detention is not in the public interest as determined by those officials identified in paragraph (a) of this section." 8 C.F.R. § 212.5(b)(5) (discussing discretionary parole under 8 U.S.C. § 1182(d)(5)(a)). Importantly, this means that section 1225(b)(2)'s "mandatory detention" is not an absolute command.

For the purposes of this Order, though, it does not matter. This is because, like all other forms of immigration detention, even mandatory detention under section 1225(b)(2) is constitutionally constrained by the Due Process Clause. Indeed, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings. So, the detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quotation marks and citations omitted). Specifically, the Supreme Court has explained that the Due Process Clause protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. *See Zadvydas*, 533 U.S. at 690-91. And the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals. *See United States v. Salerno*, 481 U.S. 739, 750-51 (1987); *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Kansas v. Hendricks*, 521 U.S. 346, 360 (1997). The only exception to this line of Supreme Court cases is *Demore v. Kim*, 538 U.S. 510 (2003), where the Supreme Court rejected a due process challenge to the mandatory detention requirement of section 1226(c). Since Petitioner does not fall under the ambit of section 1226(c), *Demore* is clearly distinguishable.

Respondents counter that Petitioner has already received all of the due process to which he is entitled. *Cf.* ECF 4, at 8-9. All of Respondents' reasons supporting this argument are unpersuasive or inapposite. First, it is irrelevant whether or not any law prohibits re-arrest after the

15

expiration of parole because Petitioner is not challenging Respondents' decision to detain him on June 24, 2025. Indeed, any such argument from Petitioner would be at odds with his concession that he is properly detained under section 1225(b)(2). Second, and as described further below, Petitioner has a significant liberty interest in remaining in the United States. This is especially true because Petitioner filed a Form I-485 for an adjustment of his status under the Cuban Adjustment Act. *See* ECF 1-3, 1-4. That application is still pending. It would defy common sense for an individual without a significant liberty interest in remaining in the United States to also apply for a path to permanent residency. Finally, while Petitioner's initial detention may have been appropriately supported by his then-existing final order of removal, that is no longer the case. In order to justify Petitioner's re-detention "federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal. And if the noncitizen disputes the notion that changed circumstances justify his rearrest, he is entitled to a prompt hearing before an immigration judge." *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1176-77 (N.D. Cal. 2017).[5]

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the

---

[5] In their response, Respondents state that "materially changed circumstances—namely, that Petitioner was now subject to a final order of removal at the time he was apprehended and detained—support Petitioner's detention." ECF 4 at 9. In support, they cite to *Azalyar*, 2026 WL 30741, at *5, which, in turn, cites *Saravia*, 280 F.Supp.3d at 1176, "explaining that a government's legitimate interest in ensuring that noncitizens appear for removal hearings requires 'evidence of materially changed circumstances' such as if the alien 'is not subject to a final order of removal.' " *Id.* (emphasis added to highlight inclusion of "not" by Respondents). This is a serious misstatement of both *Azalyar* and *Saravia* because these cases unequivocally state that the "evidence of materially changed circumstances" is actually being subject to a final order of removal. As stated several times throughout this Order, Petitioner is not presently subject to a final order of removal.

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

1. **Private Interest**

The private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (noting the same in the context of immigration detention proceedings). Here, Petitioner has already spent more than a year and a half living in the United States. *Cf. Ordonez-Lopez v. United States Dep't of Homeland Sec.*, Case No. EP-25-CV-470, 2025 WL 3123828, at *3 (W.D. Tex. Nov. 7, 2025) ("[N]oncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status."). Petitioner also has an established job—indeed, Petitioner was traveling for work when he was detained in this matter. *Cf. Azalyar v. Raycraft*, --- F.Supp.3d ---, 2026 WL 30741, at *4 n.10 (noting that "[t]his liberty interest also implicates Azalyar's ability to mitigate economic hardship by maintaining gainful employment" and collecting cases). And, as previously noted, Petitioner has filed for an adjustment of status under the Cuban Adjustment Act, which would provide him with a pathway to legal residency in the United States. It would defy reason to suggest that this manifestation of an intent to stay and continue to build a life here does not represent a significant liberty interest.

2. **Risk of Erroneous Deprivation**

The second *Matthews* factor asks Courts to consider whether the challenged procedure risks the erroneous deprivation of the petitioner's liberty. There can be no question that Petitioner's prolonged detention without relief constitutes a high risk of erroneous deprivation. This is especially true when Petitioner has no statutory right to a bond hearing and is completely beholden to the discretion of the officials detaining him in the first place. As discussed, "[c]ivil immigration

detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Zapata v. Kaiser*, Case No. 25-cv-7492, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) (quoting *Zadvydas*, 533 U.S. at 690). Considering that Petitioner was previously paroled into the country, Petitioner has already been found to not be a flight risk nor a danger to the community. Any potential risk of flight suggested by his alleged failure to appear at the May 5, 2025, removal hearing is mitigated by Petitioner's manifested intent to remain through his application under the Cuban Adjustment Act. Respondents do not point to any evidence suggesting that, since his initial arrival in the United States, Petitioner has become a danger to the community. Accordingly, the risk of erroneous deprivation of Petitioner's liberty interest is high.

    **3. Government Interest**

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the Government has legitimate interests in ensuring that aliens appear for removal hearings and do not pose a danger to the community. However, a "routine bond hearing" before an IJ presents "minimal" burdens to the United States. *Hyppolite v. Noem*, 808 F.Supp.3d 474, 494 (E.D. N.Y. 2025). These procedures are also already in place. *Id.* Further, Respondents will also have an opportunity to present their case at any proper, personalized bond redetermination hearing, so there is no risk that requiring a proper bond redetermination hearing will impede the Government's interests. Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 784 F.Supp.3d 1175, 1190 (D. Minn. 2025).

All three *Matthews* factors favor Petitioner. Accordingly, Due Process entitles Petitioner to an individualized bond hearing on the merits before a neutral IJ.

### D. Remedy

Having established that Petitioner's continued detention without a personalized bond hearing violates Due Process, the Court now turns to fashioning the appropriate remedy in this matter. As an initial matter, this Court incorporates by reference its reasoning in *Reyes Rodriguez v. Greene*, Case No. 4:26-cv-0333, 2026 WL 574961, at **13-15 (N.D. Ohio Mar. 2, 2026). Distinct to this case, however, is the fact that Petitioner has already been paroled before. This means that, at the time of his parole, Petitioner was not deemed to be a danger to the community or a flight risk. And now, two and a half years later, Respondents have not provided any evidence to suggest that its prior analysis has changed. Indeed, Respondents acknowledge that Petitioner has no known criminal record, *see* ECF 4-4, at 4, let alone been arrested in connection with or engaged in prior criminal activity, *see id.*, at 3 (answering "no" to the question "has the alien ever been arrested, convicted or engaged in prior criminal activity" at the time of Petitioner's detention in June 2025). The one difference is that Petitioner allegedly failed to appear for his removal hearing in Dallas, Texas, on May 5, 2025. But, as previously noted, this is offset by Petitioner's clear intent to remain in the country. Avoiding his immigration proceedings would be in direct contradiction with his desire to proceed through immigration proceedings that would allow him to remain lawfully in the country.

This Court continues to be persuaded by the majority of district and appellate courts around the country that have similarly held that the Government must bear the burden by proof of clear and convincing evidence. Especially when taking into account this Court's analysis under *Matthews*, the Court finds that Petitioner is entitled to a bond hearing before a neutral IJ, where the Government must bear the burden of proving, by clear and convincing evidence, that Petitioner is either a danger to the community or a flight risk.

19

## V. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Petitioner's request for habeas relief. The Court hereby **ORDERS** that Respondents **shall** either: (1) within five business days of this order (*i.e.*, 5:00 pm on Monday, March 16, 2026), provide Petitioner with an individualized bond hearing, before a neutral IJ, at which the Government shall bear the burden of proof by clear and convincing evidence of justifying Petitioner's continued detention; or (2) immediately release Petitioner from custody. If Petitioner is released, with or without posting bond, Respondents **MUST** return all of Petitioner's credentials to him, including his social security card. The Court **FURTHER ORDERS** Respondents to file a status report within 48 hours of the bond hearing or Petitioner's release, but no later than 3:00pm on March 18, 2026, certifying compliance with this Order. The status report **shall** inform the Court whether a bond hearing was held and, if so, the outcome of that bond determination and, if bond was denied, the reasons for the denial.

**IT IS SO ORDERED.**

Dated: March 9, 2026

*s/Dan Aaron Polster*
United States District Judge